UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| ROBERT G. FOSTER,<br><br>         Plaintiff,<br><br>  vs.<br><br>MICHAEL J. ASTRUE, Commissioner<br> of the Social Security Administration,<br><br>         Defendant.[1] | )<br>)<br>)<br>)    1:06-cv-534-SEB-JMS<br>)<br>)<br>)<br>)<br>) |

### Entry Discussing Complaint for Judicial Review

Robert G. Foster ("Foster") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **affirmed.**

### I. BACKGROUND

Foster filed applications for SSI and DIB on June 27, 2002, alleging an onset date of disability of April 20, 2002. His applications were denied initially and upon reconsideration. His request for a hearing before an Administrative Law Judge ("ALJ") was granted, and such hearing was conducted on June 21, 2005. Foster was present, accompanied by his attorney. Medical and other records were introduced into evidence, and Foster, two medical experts and a vocational expert testified at the hearing. The ALJ issued a decision on October 28, 2005, denying benefits. On February 9, 2006, the Appeals Council denied Foster's request for review, making the ALJ's decision final, *see Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994), and this action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d) of the *Federal Rules of Civil Procedure*, Michael J. Astrue, in his official capacity only, is the proper defendant in this action.

The ALJ's decision included the following findings: (1) Foster met the nondisability requirements for a period of disability under the Act and was insured for benefits through the date of the ALJ's decision; (2) Foster had not engaged in substantial gainful activity since the alleged onset of disability; (3) Foster's back pain and affective disorders were considered "severe" based on the requirements in the regulations; (4) Foster's medically determinable impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; (5) Foster's allegations regarding his limitations were not totally credible for the reasons set forth in the body of the ALJ's decision; (6) Foster had the residual functional capacity ("RFC") to perform the exertional requirements of light level work with no more than occasional squatting, kneeling, stooping, bending, crawling, and no complicated tasks; (7) Foster was unable to perform any of his past relevant work; (8) Foster was an individual closely approaching advanced age, he had more than a high school (or high school equivalent) education, and had transferable skills from skilled work previously performed as described in the body of the ALJ's decision; and (9) Foster had the RFC to perform a significant range of light work; and (10) although Foster's exertional limitations did not allow him to perform the full range of light work, using Medical-Vocational Rule 202.15 as a framework for decision-making, there were a significant number of jobs in the regional economy that he could perform, including work in the retail field and purchasing. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Foster was not under a "disability" as defined in the Act at any time through the date of the ALJ's decision.

## II.  DISCUSSION

### A.  Applicable Law

To be eligible for DIB and SSI, a claimant must prove he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Butera v. Apfel,* 173 F.3d 1049, 1054 (7th Cir. 1999).

> In order to determine whether an individual is entitled to disability insurance benefits, the ALJ must engage in a sequential five-step process which establishes whether or not the claimant is disabled. The claimant must show that: (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P,

2

> Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir.1997); 20 C.F.R. § 416.920.

*Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B.  Analysis

The ALJ determined that Foster had "severe" impairments of back pain and affective disorders, but he could perform a significant number of light jobs and, therefore, was not disabled. Foster argues that the ALJ committed legal error by failing (1) to make a finding as to what skills were transferable to other work, and (2) to properly evaluate his credibility.

Foster first argues that if a finding is made that a claimant has transferable skills, it is mandatory that the acquired work skills be identified, pursuant to Social Security Ruling 82-41. In support of this position, Foster relies on *Prince v. Sullivan*, 933 F.2d 598, 602-03 (7th Cir. 1991). *Prince* does not so hold. In *Prince,* the ALJ failed to make any determination of the claimant's RFC and also failed to determine whether the claimant's RFC would permit him to return to his past occupation. *Id.* at 603. In that case, the ALJ failed to ask the vocational expert specific questions about the claimant's past job and his capacity to perform them. The court did state that Social Security rulings are binding on the Social Security Administration, but the court further noted that it reviewed the ALJ's determination for substantial evidence and was not in a position to draw factual conclusions in the first instance. *Id.* at 602-03.

In this case, the ALJ determined Foster's RFC and asked the vocational expert specifically about what acquired skills from past relevant work would be transferable. (R. at 406-09). The vocational expert testified that the transferable skills would consist of clerical skills, payroll, scheduling, procurement and ordering, the ability to interact with customers and do problem solving, and skills in supervising, hiring, firing, training, and disciplining employees. (R. at 407). She further testified that such skills could be transferred to jobs in the retail and purchasing fields. *Id.* In his decision, the ALJ found that Foster had transferable skills from skilled work previously performed, (R. at 18), and that based on the vocational expert testimony, Foster could perform light level work with various restrictions and with transferable skills. (R. at 17). Although the ALJ did not identify in the body of his decision the particular transferable skills, given the entire record and the ALJ's decision as a whole, the court can trace the ALJ's reasoning in this respect.

Foster also contends that the ALJ's credibility finding was flawed. Specifically, Foster argues that the ALJ failed to consider Foster's mental condition as it combined with his physical problems. This contention is not persuasive. The ALJ reviewed with the medical expert Foster's history of coronary artery disease, peripheral vascular disease, high cholesterol, chronic low back pain, and osteoarthritis and the fact that Foster had an aortal femoral bypass surgery in 2004. (R. at 403). The medical expert opined that Foster could perform light level work with postural restrictions limited to "occasional." (R. at 209, 404-05). The psychological expert testified that Foster had a pain disorder associated with psychological factors of anxiety, depression related to his back injury, and a GAF of 72, which suggested only transient problems. (R. at 406). The psychological expert testified that Foster would have some difficulty with concentration which would restrict him to no complex tasks. *Id.* The ALJ noted that no medical source limited his non-exertional functioning. *Id.* The ALJ based his evaluation of Foster's mental impairment, in part, on the opinion of the psychological expert who considered the effect of physical pain on Foster's mental conditions. He also discussed the mental status examination, which revealed responses well within normal limits. (R. at 17). Moreover, Foster acknowledges that the ALJ discussed his mental impairment with respect to his daily living activities, social functioning, persistence and pace, and episodes of decompensation. The ALJ noted that the State Agency consultants determined that Foster had no severe mental impairment, but he nonetheless included non-exertional limitations in assessing his RFC. (R. at 17). The ALJ's assessment of Foster's mental impairments was supported by substantial evidence.

Foster also asserts that in weighing his credibility, the ALJ failed to consider his peripheral vascular disease and his report that he had been sedentary because of severe claudication with even minimal activity. The record shows that after a two-vessel angioplasty in December 2003, Foster showed continued improvement. (R. at 228-232). In 2004, after having surgery related to his peripheral vascular disease with occluded right common iliac, his physician noted that he was "stable," "doing very well" and had no chest pain or shortness of breath. (R. at 227). The physician encouraged Foster to lead an "active, healthy lifestyle with a regular exercise regimen." *Id.* The ALJ noted that there was "no medical source statement from any treating or consultative source to the effect that [Foster] has any physical restrictions." *Id.* Foster has not shown how any further consideration of his peripheral vascular disease would have changed the ALJ's credibility determination or his RFC assessment.

The proper criteria to consider when evaluating a claimant's credibility, as cited by the ALJ, include: daily activities; the location, duration, frequency, and intensity of pain; precipitating and aggravating factors; type, dosage, effectiveness, and side-effects of medication; treatment, other than medication, for relief of pain; and the objective medical evidence and any other factors concerning functional limitations and restrictions. (R. at 15, citing Social Security Ruling 96-7p; 20 C.F.R. § 404.1529). The ALJ discussed Foster's testimony, his daily activities, the medical evidence, physician reports, testimony of the medical experts, and evaluations by State Agency experts. (R. at 15-17). He noted that medication helped his back pain, as did lying down. (R. at 15). He acknowledged that Foster had a severe back disorder and affective disorders, but could not credit allegations of disabling pain and functional limitations. (R. at 16). The ALJ noted that Foster's pain had

4

been treated conservatively, with only medications and physical therapy. *Id.* For his back pain, Foster had had no surgery, hospitalizations, epidural injections, no assistive devices, and no TENS unit or other nerve root block. *Id.* He noted that clinical findings were essentially normal and no treating or consulting physician had stated that Foster had any physical restrictions. (R. at 17). He further noted that no clinical findings supported Foster's contention that he needed to lie down four hours a day.[2] *Id.* He concluded that his RFC assessment was consistent with Foster's daily activities. *Id.* The ALJ determined that although the State Agency examiners found Foster could perform medium level work, Foster could perform only light work with certain restrictions. *Id.*

The ALJ credited Foster's reports of functional limitations to some extent in assessing his RFC, finding that Foster could do light level work with no more than occasional squatting, kneeling, stooping, bending and crawling, and no complicated tasks. (R. at 18). The court grants special deference to the credibility determination made by the ALJ and generally will not overturn an ALJ's credibility finding unless it is "patently wrong." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir.2001). In this case, the ALJ provided reasons supported by record evidence for finding not fully credible Foster's allegations that he was totally disabled. The ALJ's discussion relating to Foster's credibility is adequate to allow the court to trace his reasoning. The court does not find that the ALJ's analysis is patently wrong, and therefore, must affirm the ALJ's credibility determination.

The court must decline any invitation to resolve conflicts in or reweigh the evidence. *Diaz v. Chater,* 55 F.3d 300, 305 (7th Cir. 1995) ("We cannot substitute our own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled."). An ALJ's decision is sufficient if, as is true in this case, "it assures us that an ALJ considered the important evidence and enables us to trace its reasoning." *Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003).

In determining Foster's eligibility for benefits, the ALJ applied the proper analytical methodology and fairly considered and weighed the evidence. The ALJ's decision was based on consideration of: (1) Foster's age, education, and work history; (2) Foster's history of diagnoses, treatment, medications, and evaluations; (3) Foster's own account of his conditions, capabilities, limitations, symptoms and daily routine; and (4) the testimony of two medical experts and a vocational expert.

There was no significant evidence, symptom, complaint, or issue which the ALJ's decision overlooked. The ALJ discussed the evidence and explained his rationale for accepting and rejecting the various opinions of record. As noted above, the court cannot reweigh the evidence. Substantial evidence supports the ALJ's findings of fact and

---

[2]Foster argues that the ALJ erred in not giving credit to his testimony that he needed to lie down four hours a day. Although the medical expert testified that Foster's condition could produce pain which would require him to lie down and rest, (R. at 410), such testimony does not go so far as to support a finding that Foster must lie down four hours a day.

identification and assessment of Foster's physical and mental impairments, and there was no error of law in the manner in which the evidence was evaluated. The ALJ sufficiently articulated his assessment of the evidence and there was substantial evidence to support the ALJ's determination that Foster was not disabled as defined in the Act at any time through the date of the ALJ's decision.

### III. CONCLUSION

There was no reversible error in the assessment of Foster's applications for DIB and SSI. The final decision of the Commissioner is supported by substantial evidence and is not tainted by legal error. In these circumstances, Foster is not entitled to relief in this action. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 05/24/2007

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana